Unemployment Compensation Board of Review of The Commonwealth of Pennsylvania *v.* Edmund G. Pinger, Appellant.

Argued June 6, 1975, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

62

*Anthony J. Lucadamo,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, August 8, 1975:

Edmund G. Pinger (appellant) appeals to this Court from an order of the Unemployment Compensation Board of Review (Board) which terminated his unemployment benefits because of his alleged discouraging reply to an offer of employment.

The Board denied further benefits by invoking Section 402(a) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(a), which provides in pertinent part:

"An employe shall be ineligible for compensation for any week—

"(a) In which his unemployment is due to failure, *without good cause,* either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer...." (Emphasis added.)

"Good cause" has been equated with "good faith," which requires affirmative conduct consistent with a

genuine desire to work and be self-supporting. *Koscur Unemployment Compensation Case,* 196 Pa. Superior Ct. 548, 176 A.2d 164 (1961).. A claimant cannot refuse an offer of suitable employment and still be entitled to benefits, absent reasonable and substantial grounds for such refusal. *Trella v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 305, 309 A.2d 742 (1973). Discouraging a job opportunity is equivalent to refusing a job opportunity. *Bradley Unemployment Compensation Case,* 198 Pa. Superior Ct. 356, 181 A.2d 894 (1962).

Our scope of review in unemployment compensation cases is limited to questions of law and, absent fraud, to a determination as to whether the Board's findings are supported by the evidence. Questions of credibility and the weight to be given evidence are for the Board. *Shira v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 457, 310 A.2d 708 (1973).

The Board found:

"1. Claimant was last employed by HUD, Wilkes-Barre, Pa., and his last day of work was January 25, 1974.

"2. Claimant worked for this employer as an engineering inspector for 1½ years and was paid at the rate of $9,500.

"3. Claimant was previously employed by Burg Electronics, New Cumberland, Pa., as an engineer for 6 months and was paid at the rate of $11,000.

"4. On May 6 claimant was interviewed in the Hazleton local office and was given a referral to possible employment as a plant engineer with Certain-Teed, Mountaintop, Pa., at a salary of $13,000 to $15,000 a year.

"5. Claimant was requested to mail a form ES-508X, Notice of Referral from the Pennsylvania State Employment Service and a resume to Certain-Teed.

"6. Claimant mailed the form ES-508X and a resume to Certain-Teed.

"7. In addition, the claimant sent the following letter to Certain-Teed:

> Phone: 717-636-0872
> Edmund Pinger
> 535 Hemlock Street
> Freeland, PA 18224
> May 7, 1974

Certain-Teed Corp.
Crestwood Industrial Park
Mountaintop, Penna.
Attention: Mr. Mooney
Dear Mr. Mooney,

At the request of Mr. Hall, Penna. State Employment Service, Hazleton Office, I enclose a copy of my resume for your Plant Engineer opening.

While you study my resume, please forward immediately:

1. Detailed job description of this position
2. Your Company's current annual report
3. Organization chart for Mt. Top Plant
4. Copy of latest Union Shop Contract
5. Detailed history of Plant Engineer labor turnover—voluntary or otherwise at your Mountain Top plant—Discussion on labor turnover on Plant Managers also.

In addition reply to the following:

1. What happened to the individual who was incumbent in the Plant Engineer position? Was he fired, transferred, promoted, or resigned? Why?
2. Why are you staffing this Plant Engineer position at this time—a major contract or normal expansion & growth?
3. What will you expect of the man chosen for this job? What support will management give?

4. What are the short- and long-range job growth possibilities?

5. What is the next step in the progression ladder?

6. Is the salary of this job red-lined at $15,000.00 tops? What has been the past incumbents salary increases given?

7. What kind of budget is allocated to Plant Engineer Department? What is the allowable purchase limit in the Plant Engineering Department before multiple corporate signatures are required?

8. How is the Plant Engineer job organized?

9. Do you want a man with drive or a docile personality?

10. If an offer is made, will it be in writing, signed by a responsible corporate officer?

*Please comment on the following:*

On basis of your operation 24 hour day—7 day week, assume the following figures below for personnel during a particular week—the plant engineer and a shop-union person required to complete work on rush basis 14 hours/7 days.

UNION-SHOP PERSON

Base Pay 4.00/hr.
   40 hours .....$160.00
  O.T. (T & ½)
   6 hrs./day
   5 days—30 hrs. $180.00
Sat. & Sun. (2T)
  14 & 14 = 28 hrs. ...$224.00
For 98 hour week .....$564.00
Avg./Hrs. Worker ..... $5.74
On 52 week basis above $29,-328.00 (Certified Annual Payroll figure will determine shop total yearly pay—)

PLANT ENGINEER

$288.00/week   ($15,000.00/yr.)
  40 hours ...........$0
  30 hours ...........
  30 hours ...........$0
  28 hours ...........$0
For 98 hr. wk. ........$288.00
Avg./hr. worked ...... $2.94
On 52 week basis ...$15,000.00
*On your present around-the-clock operations*—Plant Engineer on call alert 168 hr. week ... Avg./hr. $1.71/hr.
On basis of 40 hour week—$68.40 Pay—is almost half of recently enacted federal wage minimum.

Very truly yours,

Signed by Edmund Pinger

"8. The referral employer did not contact the claimant, but the referral employer did notify the

local office that no reply would be given to the claimant due to the type of letter which he wrote."

The testimony and other evidence in the record clearly supports all of these findings.

We therefore narrow our review to the solitary issue of whether or not claimant's letter to the referral employer evidences, as a matter of law, conduct not consistent with a genuine desire to work and be self-supporting. We find that it does and affirm.

A cursory glance at the letter reveals that the referral employer's reaction to its contents was foreseeable to the claimant. Indeed, it would be a very rare employer who would not adversely react to its tone and most of its subject matter. Claimant's *demand* for *immediate* forwarding of items 3, 4, and 5 (in the second paragraph) is indeed presumptuous. The same can be said concerning questions 1, 2, and 10 in the third paragraph. The last section, concerning the hourly comparisons, is preposterous. Surely a college graduate with many years of experience in a highly technical profession cannot now contend that these computations (based on the fact that the position required claimant to be "on call" 24 hours a day) are in any manner accurate, let alone appropriate to an employee inquiry.

Claimant suggests many reasons and justifications for the letter and its provisions. We find them all to be without merit, and, rather than prolong this opinion, we rest our judicial review conclusion on the patent absurdity of appellant's incredible letter.

Order affirmed.